UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alex Martin,                                         Case No. 3:18-cv-219

          Plaintiff

v.                                                   MEMORANDUM OPINION
                                                     AND ORDER

Commissioner of Social Security,

          Defendant

## I.    INTRODUCTION

Before me is the Report and Recommendation ("R & R") of Magistrate Judge Thomas M. Parker. (Doc. No. 16). Judge Parker recommends I affirm the final decision of Defendant Commissioner of Social Security denying Plaintiff Alex Martin's applications for Disability Insurance Benefits and Supplemental Security Income. (*Id.*). Martin filed objections to the R & R, (Doc. No. 17), and the Commissioner filed a response, (Doc. No. 18).

## II.    BACKGROUND

After reviewing the R & R, and hearing no objection to these sections by Martin, I hereby incorporate and adopt, in full, the "Procedural History" and "Evidence" sections set forth in the R & R. (Doc. No. 16 at 1-21).

## III.    STANDARD

A district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The district judge "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## IV. Discussion

Martin objects to the R & R on two grounds. First, he contends Judge Parker erred in finding the ALJ properly evaluated the weight given to certain medical opinions. Second, Martin disputes Judge Parker's finding that the ALJ properly evaluated Martin's subjective symptoms.

### A. Treating Physician Rule

When assessing a claim, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

A treating source medical opinion is given controlling weight unless it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The "good reasons" "requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole v Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "[A]n ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)) (emphasis added in *Blakely*).

In this case, Martin objects to Judge Parker's finding that the ALJ properly applied the treating physician rule. Specifically, Martin alleges the ALJ failed to give "good reasons" for discounting the opinions of treating physicians Johnathan Rohr's, M.D. and Van Warren, M.D.

Before considering whether the ALJ properly applied the treating physician rule to these physicians' opinions, a brief discussion of the opinion of Lawrence Monger, M.D. is necessary. In the decision, the ALJ stated:

> In July 2015, Lawrence Monger, M.D., noted that the claimant requested that he complete Lucas County Job and Family Services forms, and that the claimant, "essentially wanted (Dr. Monger) to say that he (was) currently unemployable" (Exhibit 29F/116-117). Dr. Monger noted that Dr. Rizk had diagnosed fibromyalgia and that the claimant had migraine headaches that the neurology service treated him for (Id.). Dr. Monger noted that a recent EMG was negative for radiculopathy or nerve entrapment (Id.). He expressly stated in this note that he had no basis for opining that the claimant was unemployable (Id.). Dr. Monger also expressly stated

3

> that although the claimant had had medical conditions requiring ongoing treatment, his symptoms should not preclude him from employment (Id.). This statement merits great weight, as it is consistent with the evidence as whole. The claimant has medically determined impairments that reasonably limit him to the sedentary exertional level with further limitations defined in the functional capacity assessment. However, the record does not support work-preclusive limitations.
>
> In November 2015, Dr. Monger again expressly stated that he had no indication that the claimant could not work (Exhibit 29F/97, 101, 105). The claimant indicated that he would try to get more records to Dr. Monger that the claimant believed "may support his case that he is unemployable," and Dr. Monger agreed to review those records (Id.). There is no indication that the claimant provided any additional documentation to Dr. Monger; and the claimant stopped seeing Dr. Monger around this time.

(Doc. No. 10 at 759).

Earlier in the decision the ALJ briefly referred to Martin's treatment relationship with Dr. Monger. (Doc. No. 10 at 758). But when assigning "great weight" to Dr. Monger's opinion, the ALJ largely ignores any of Dr. Monger's medical findings. Instead, the ALJ simply adopts Dr. Monger's conclusion regarding Martin's ability to work. Aside from the fact that opinions such as whether one is "unable to work" are not "medical opinions," but "issues reserved to the Commissioner," 20 C.F.R. §§ 404.1527(d), 416.927(d), the decision is devoid of any explanation to support the ALJ's conclusory statement that Dr. Monger's opinion was "consistent with the evidence as a whole." Without this required explanation, I cannot conclude the ALJ's decision to give this opinion "great weight" was supported by substantial evidence.

Rejecting the ALJ's decision to give "great weight" to Dr. Monger's conclusion of employability, I now turn to the ALJ's assessments of Drs. Rohrs and Warren.

Although Dr. Rohrs treated Martin for approximately four years, the only reference to Dr. Rohrs is contained in the following paragraph:

> The undersigned considered, but gave little weight to the September 2012 Lucas County "basic medical" form that Jonathan Rohrs, M.D., completed (Exhibit 11F). Dr. Rohrs indicated that the claimant was limited to sedentary exertional level work, had marked difficulties handling, and moderate difficulties reaching (Id.). Dr. Rohrs' assessment is inconsistent in that he indicates that the claimant has a permanent disability while he also states that the claimant was unemployable *for six months* (Id.).

4

> In addition, as described in the foregoing discussion of the treatment record, the evidence as a whole (including many unremarkable musculoskeletal system reviews and examinations) does not support such functional limitations. Similarly, Dr. Rohrs completed a subsequent form in January 2014 indicating that the claimant would be disabled ("unemployable") for *ten months* despite repeated physical examinations that did not document disabling symptoms (Exhibit 21F). The undersigned found Dr. Monger's assessment far more consistent with the evidence as a whole; particularly because Dr. Monger stated specifically *why* he had determined that claimant was not unemployable (Exhibit 29F/116-117).

(Doc. No. 10 at 759). Not only does this analysis fail to acknowledge the length and extent of the treatment relationship, but it also fails to meaningfully analyze the consistency and supportability of Dr. Rohrs's opinion. More so, the ALJ inexplicably analyzed the weight to give to a dated September 2012 opinion rather than Dr. Rohrs's more recent January 2014 opinion. Ultimately, rather than give "*good* reasons" for his weight determination, the ALJ apparently discounts Dr. Rohrs's dated opinion because its conclusion is inconsistent with the ALJ's desired result: employability. Because the ALJ failed to comply with the treating physician rule, I must respectfully disagree with Judge Parker and conclude the ALJ's decision is not supported by substantial evidence.

The ALJ's failure to so much as acknowledge Dr. Rohrs's treatment records likely tainted his decision as he did not consider all medical evidence, as required. Even so, I will briefly address the ALJ's analysis of Dr. Warren's opinion, as well.

Unlike the ALJ's analysis of Dr. Rohrs opinion, the ALJ implicitly discussed the length and extent of Dr. Warren's treatment relationship with Martin and acknowledged Dr. Warren's specialization as a "Board Certified Rheumatologist" in the course of finding Martin's fibromyalgia to be a severe impairment. (Doc. No. 10 at 754, 757-58). But, when assessing Dr. Warren's opinion in relation to the RFC, the ALJ stated,

> [T]he undersigned gave considerably less weight to Dr. Warren's assessment of the functional limitations resulting from his impairments. Dr. Warren opined that the claimant was limited to standing or walking for up to 2 hours a day, sitting up to 4 hours a day, and would be limited to rare bilateral fingering ([Exhibit 22F, 23F, 32F]). He further noted that the claimant would need unscheduled breaks every

5

> hour lasting about 10 minutes and that he would likely be absent from work about 3 days per month as a result of the impairments or treatment (Id.).
>
> The treatment record does not reflect the extreme functional limitations that Dr. Warren endorsed. He only scheduled visits every three months, and noted symptom reduction with medication (Sulindac) (See, *e.g.,* Exhibit 15F). This is not to suggest that the claimant was symptom-free; the undersigned appreciates that the claimant did and continues to experience symptoms such that he is limited to work at the sedentary exertional level, with additional limitations as defined in the functional capacity assessment. However, neither Dr. Warren's statement nor his medical record documents evidence supporting that the claimant's fibromyalgia and other impairments preclude all work activity. The undersigned found Dr. Monger's assessment more consistent with the evidence as a whole (Exhibit 19F/116-117).

(Doc. No. 10 at 759-60). The only thing by way of a reviewable explanation is the ALJ's statement about the number of visits and the efficacy of medications. But the ALJ fails to explain how the number of scheduled visits is relevant to Martin's functional limitations, especially since the ALJ stated Martin was treated with medication rather than a procedure required to be performed in Dr. Warren's office. Rather than explaining his conclusion that the opined functional limitations were inconsistent and unsupported, the ALJ again makes only a bare conclusory statement of such and repeats his conclusion that Dr. Monger's finding on an "issue reserved for the Commissioner" was more consistent with the evidence.

Because the ALJ made only bare conclusory findings, rather than giving "good reasons" for his weight determinations based upon the factors outlined in the regulations as required, I cannot meaningfully review his decision. Therefore, I conclude his decision was not supported by "substantial evidence" and must be vacated. On remand, I advise the ALJ to consider all of the medical records as required by the regulations and make his determinations of weight by comparing these records to the medical findings rather than conclusions on employability.

**B.    Subjective Symptoms**

In his second objection to the R & R, Martin contends Judge Parker erred in finding the ALJ's assessment of Martin's subjective symptoms was supported by "substantial evidence."

6

Specifically, Martin claims neither Judge Parker nor the ALJ properly considered his symptoms in light of the "unique nature of fibromyalgia." He also claims Judge Parker improperly upheld the ALJ's characterization of Martin's compliance with treatment. I agree.

"F[ibromyalgia] is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Specifically, a claimant with fibromyalgia experiences "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)." *Id.* Due to the nature of fibromyalgia, objective medical evidence is rarely available to corroborate the claimant's subjective symptoms concerning the intensity, persistence, and limiting effects of his fibromyalgia-related pain. *See Rogers*, 486 F.3d at 248-49. Therefore, subjective evidence plays a crucial role in evaluating any debilitating effects of the claimant's fibromyalgia.

In this case, the ALJ found Martin has the "severe impairment" of fibromyalgia. But when assessing Martin's RFC, he discounted Martin's subjective symptoms because he found the intensity, persistence, and limiting effects were not "entirely consistent" with the record evidence. (Doc. No. 10 at 757). While the ALJ acknowledged that Martin sought treatment for pain over the course of several years, he discounted this pain because of objective medical findings. Some examples of this include the following:

> In January 2012, the claimant had an EMG secondary to complaints of back and neck pain with bilateral lower and upper extremity pain (Exhibit 3F/4-7). The EMG, however, was within normal limits (Id.). The claimant renewed complaints of radiating neck pain in July 2015, and radiological imaging of his cervical spine was again unremarkable, and a December EMG was again normal (Exhibit 26F/ 1, 3).
> …
> In July 2015, the claimant established care with Lawrence Monger, M.D. and Tallat Rizk, M.D., complaining of neck pain and upper limb pain; EMG and NCS were normal (Exhibit 29F/159, 162).

7

(Doc. No. 10 at 757).  The ALJ's emphasis on the objective medical records fails to account for the unique nature of fibromyalgia.

Just as troublesome is the fact that when reviewing Martin's medical records related to pain, the ALJ misstated that Martin presented with no pain on three separate occasions.  (Doc. No. 10 at 757-58).  But the records cited by the ALJ for these assertions are ambiguous, at best.  That is, while each possesses a box marked "no pain," each also contains a handwritten notation of "upper & lower extremity pain" or "chronic pain."  (Doc. No. 10 at 429, 432, 562).  Because the ALJ does not acknowledge this disparity, I cannot conclude he adequately reviewed these records and accounted for them when evaluating Martin's fibromyalgia-related subjective symptoms.

As for Martin's specific arguments, I agree that the ALJ "overstated" Martin's alleged noncompliance with treatment.  But, unlike Judge Parker, I find this overstatement relevant in light of the record as a whole.  First, in the face of the voluminous medical evidence, the ALJ is able to cite only two instances of noncompliance.  Second, these isolated incidences relate to Martin's migraines and heart issues rather than his fibromyalgia.  (Doc. No. 10 at 757 (citing *id.* at 529-30, 1157)).  The ALJ cites no time Martin was noncompliant with prescribed fibromyalgia treatment.  And third, even if these two instances were probative, the ALJ fails to acknowledge Martin's testimony explaining each of these isolated incidents, let alone evaluate the credibility of this testimony.  Without more, I cannot conclude the ALJ's finding regarding compliance with treatment was supported by substantial evidence.

Finally, when evaluating Martin's daily activities, the ALJ failed to examine the physical effects coextensive with and aggravated by those activities.  *See Rogers*, 486 F.3d at 248-49.  Although the ALJ initially discussed Martin's testimony regarding his daily activities, he failed to take these activities into account when evaluating Martin's subjective symptoms.  Instead, the ALJ focused on the fact that, every weeknight, Martin's child stays at Martin's home with Martin and his parents.

8

(Doc. No. 10 at 758). But where the child sleeps says nothing about what daily activities Martin is able to perform on a sustained basis. Because the ALJ based his credibility analysis of Martin's daily activities not on Martin's actual daily activities but potentially irrelevant facts, I hereby reject his conclusion on this matter.

In sum, I respectfully disagree with Judge Parker and conclude the ALJ failed to properly evaluate Martin's subjective symptoms. Not only did the ALJ place undue weight on the objective medical evidence, the ALJ also failed to accurately represent and account for the record evidence. Therefore, this issue must be remanded for a proper evaluation of Martin's symptoms in light of his fibromyalgia.

## V.     CONCLUSION

For the foregoing reasons, I sustain Martin's objections and reject the R & R on those issues. Rather than affirm the Commissioner's decision, as recommended, I hereby vacate the decision and remand the matter for further proceedings consistent with this Memorandum Opinion and Order.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge