UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Alex Martin,                                               Case No. 3:18-cv-219

                 Plaintiff,

v.                                                           MEMORANDUM OPINION
                                                                     AND ORDER

Commissioner of Social Security,

                 Defendant.

## I. INTRODUCTION

Plaintiff Alex Martin has filed a motion for payment of attorney's fees pursuant to 42 U.S.C. § 406(b). (Doc. No. 24). The Commissioner opposed the motion, (Doc. No. 26), and Plaintiff filed a reply. (Doc. No. 27).

## II. ANALYSIS

Under 42 U.S.C. § 406(b), when a claimant seeking social security disability benefits prevails in court, the court may award the claimant's attorney a reasonable fee for the successful representation. 42 U.S.C. § 406(b)(1)(A). The fee may not exceed 25% of the past-due benefits awarded through the judgment and is taken "out of, and not in addition to, the amount of such past-due benefits." *Id.*

The Sixth Circuit "accords a rebuttable presumption of reasonableness to contingency-fee agreements that comply with § 406(b)'s 25-percent cap." *Lasley v. Comm'r of Soc. Sec.*, 771 F.3d 308, 309 (6th Cir. 2014). Martin signed a contingency-fee agreement for 25% of his past-due benefits on August 29, 2013. (*See* Doc. No. 24-1). Still, § 406(b) requires "review of such arrangements as an

independent check, to assure that they yield reasonable results in particular cases." *Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002). Accordingly, the presumption of reasonableness may be rebutted, and the attorney's requested contingency-fee-agreement fee reduced, "based on the character of the representation and the results the representative achieved." *Id.* at 808 (citations omitted).

In this Circuit, "[d]eductions generally should fall into two categories: 1) those occasioned by improper conduct or ineffectiveness of counsel; and 2) situations in which counsel would otherwise enjoy a windfall because of either an inordinately large benefit award or from minimal effort expended." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989); *see also Miller v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 1018, 1038 (E.D. Mich. 2018) (applying this standard). Here, the Commissioner does not argue Martin's counsel has acted improperly or ineffectively or has expended minimal effort on this case. Instead, he argues that "reducing counsel's fee would be appropriate, given the fee's size and counsel's implied hourly rate." (Doc. No. 26 at 5).

"[A] windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market." *Hayes v. Sec. of Health and Human Servs.*, 923 F.2d 418, 422 (6th Cir. 1990). *Hayes* thus sets a *de facto* hourly rate "floor," and a reviewing court must approve a fee request at or below this hypothetical hourly rate absent deficient conduct by the plaintiff's attorney. *See id.*

The Sixth Circuit has not provided definitive guidance on how district courts should calculate the "standard rate." *Compare Ringel v. Comm'r of Soc. Sec.*, 295 F. Supp. 3d 816, 823-24, 829 (S.D. Ohio 2018) (using the EAJA rate as the primary benchmark in determining the standard rate) *with Sykes v. Comm'r of Soc. Sec.*, 144 F. Supp. 3d 919, 925-26 (E.D. Mich. 2015) (using the rate charged by the 95th percentile of public benefits attorneys in Michigan as the standard rate).

But, "[w]here an attorney has a 'standard rate' for comparable noncontingent fee cases, it is appropriate for [a] Court to consider such evidence." *Ringel*, 295 F. Supp. 3d at 829 (citing *Gisbrecht*, 535 U.S. at 808). Further, a 2020 decision of the United States District Court for the Northern District of Ohio, which the Sixth Circuit affirmed in a published opinion, concluded that $336 per hour is the market rate for social security benefits attorneys in Ohio.[1] *Steigerwald v. Saul*, No. 1:17-cv-01516, 2020 WL 6485107 at *5 n.81 (N.D. Ohio, Nov. 4, 2020) (aff'd *Steigerwald v. Comm'r of Social Sec.*, 48 F.4th 632 (6th Cir. 2022)); *see also Hayes*, 923 F.2d at 422 (explaining that its "multiplier" rule emerged from a desire to ensure that social security benefits attorneys were adequately compensated when "averaged over many cases").

Martin's counsel has attached a timesheet, affidavits, and resumes for Mary T. Meadows and Melissa L. Kunder, the two attorneys who worked on this case. (*See* Doc. No. 24-4; Doc. No. 24-5). These documents show that Meadows normally charges $300 per hour and logged 20.8 hours on this case, and that Kunder normally charges $250 per hour and spent 30.4 hours on this case. (*See* Doc. No. 24-4). Meadows's higher rate makes sense because she is more experienced than Kunder. (*See* Doc. No. 24-5). Although these two attorneys split the time on this case in roughly even fashion, I will select Meadows's rate of $300 per hour as the standard rate in this case in light of *Steigerwald*'s finding that $336 is the market rate for social security attorneys in Ohio. *See Steigerwald*, 2020 WL 6485107 at *5 n.81. Therefore, I will use a *de facto* hourly rate of $600 ($300 times two) as the *Hayes* floor.

A requested fee higher than the *Hayes* floor but under the 25% cap still requires my attention to determine whether approving such a fee would be a windfall. *See Lasley*, 771 F.3d at 310. The

---

[1] The district court in *Steigerwald* relied on a 2019 report published by the Ohio State Bar Association showing that the average hourly rate for social security benefits attorneys in Ohio is $336. *See* The Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2019* at 45. This is the most recent edition of the report at the time of writing.

factors relevant to this determination include: "the difficulty of the case, the character of the representation, the lack of delay on counsel's part, and the results that counsel achieved." *See Steigerwald*, 48 F.4th at 643.

Martin's counsel argues she should receive a fee of $40,927.00, which is 16% of the $255,868.50 in past-due benefits awarded Martin and Martin's minor dependent. (Doc. No. 24 at 1).[2] Counsel for Martin documented 51.2 hours of work on this case, yielding a *de facto* hourly rate of $799.36. (*See* Doc. No. 24 at 4-5; Doc. No. 24-4). Martin's counsel further argues the fee should be effectively discounted by $9,000—the total amount of fees previously approved under the EAJA for both civil actions related to Martin's benefits—because the EAJA requires her to refund that amount to her client in the event I approve a separate fee award under § 406(b).[3] (*See* Doc. No. 24 at 5-6). She explains that the *de facto* hourly rate once the EAJA amount is subtracted from the total fee request would be $623.57 per hour. (*See id.*).

But § 406(b) calculates the fee award cap by reference to past-due benefits, not past-due benefits plus any EAJA award. 42 U.S.C. § 406(b)(1). And Martin's counsel must choose between the lower of the § 406(b) award and the EAJA award; she cannot receive and keep both. *See Gisbrecht*, 535 U.S. at 796; *see also Ringel*, 295 F. Supp. 3d at 839 (explaining that "the EAJA fee is a

---

[2] The Social Security Administration calculated separate past-due benefit amounts for Martin and Martin's minor dependent. (*See* Doc. No. 24-2; Doc. No. 24-3). Martin's total past-due benefits amount is $170,600.50. (*See* Doc. No. 24-2 at 2) (explaining that Martin will receive a check for $127,950.50 and that $42,650.00 had been withheld to potentially pay attorney's fees). The total past-due benefits for Martin's minor dependent are $85,268.00. (*See* Doc. No. 24-3 at 2). The 25% cap in § 406(b) applies to the aggregate benefits owed to a claimant and their dependents, not just the benefits accrued by the individual claimant. *Hopkins v. Cohen*, 309 U.S. 530, 534 (1968).

[3] This is the second civil action addressing Martin's disability benefits. The first, *Martin v. Comm'r of Soc. Sec.*, No. 3:15-cv-02365 (N.D. Ohio), ended on the merits with a stipulated remand to the Commissioner. (*Martin v. Comm'r of Soc. Sec.*, No. 3:15-cv-0236, Doc. No. 19). Martin's counsel received $5,000 in EAJA fees in that case. (*Martin v. Comm'r of Soc. Sec.*, No. 3:15-cv-0236, Doc. No. 21). I awarded Martin's counsel $4,000 in EAJA fees for her work in this case. (*See* Doc. No. 22; Doc. No. 23). So, Martin's counsel is correct that she has received $9,000 in aggregate EAJA fees for representing Martin in his pursuit of disability benefits.

wash" in cases where counsel received a fee under § 406(b)). Martin's counsel cannot use her previous receipt of an EAJA fee to justify a higher fee under § 406(b).

The $799.36 *de facto* hourly rate Martin's counsel has requested in this case is 33% higher than the *Hayes* floor of $600. So, I must determine whether Martin's counsel's performance in this case, along with other factors, warrants a fee award one-third higher than the amount that would be *per se* reasonable in this case.

To begin, this was a relatively difficult case for Martin's counsel, and they achieved an excellent result. As Martin's counsel notes, they have represented him since 2013, and they pursued disability benefits on his behalf for eight years before winning approval of benefits for Martin and Martin's minor dependent. (*See* Doc. No. 27 at 10; Doc. No. 10 at 153). Martin's counsel worked diligently, representing him in this case through two briefing cycles in addition to representing him in his prior civil action. (*See* Doc. No. 11; Doc. No. 15; Doc. No. 17); *see also Martin v. Comm'r of Soc. Sec.*, No. 3:15-cv-0236 (N.D. Ohio).

Most notably, Martin's counsel persuaded me to reject a Report and Recommendation that would have denied him relief entirely. (*See* Doc. No. 19; Doc. No. 16). To do so, she made detailed legal and factual arguments based on a 1,200-page record that contained the conflicting medical opinions of 6 different doctors. (*See* Doc. No. 16 at 14-18; Doc. No. 11; Doc. No. 17). And Martin's counsel achieved substantial overall success: over $250,000 in past-due benefits, in addition to ongoing benefits. (*See* Doc. No. 24-2; Doc. No. 24-3). Further, there is no indication Martin's counsel contributed to any delay causing "the accumulation of benefits during the pendency of the case in court." *Gisbrecht*, 535 U.S. at 808. Above-average representation like this supports awarding a fee 33% above the *Hayes* floor.

The Commissioner raises three arguments as to why this fee would be a windfall.

5

First, the Commissioner suggests that the normal hourly rates of $250 and $300 cited by Martin's counsel may already reflect *Hayes* doubling "*if* [the fee] is based upon counsel's prior § 406(b) awards." (Doc. No. 26 at 3) (emphasis added). But beyond this perfunctory suggestion, the Commissioner provides no evidence or argument as to why I should disregard Martin's counsel's representations about their normal hourly rate. This speculation does not justify reducing the fee award.

Second, he argues a number of cases within the Northern District of Ohio have found *de facto* hourly rates of $350 or $400 to be "an appropriate upper limit in awarding attorney fees pursuant to § 406(b), with higher rates determined to be a windfall." (Doc. No. 26 at 3). But these string-cited cases miss the mark.

Some cited cases awarded fees where plaintiff's counsel requested a fee with a *de facto* hourly rate below $350 or $400. Because these cases dealt with a requested amount below the purported "cap"—in other words, because the requested fee was *not* a windfall—their references to an upper limit are brief and unreasoned. *See, e.g.*, *Malave v. Saul*, No. 1:18-cv-2747, 2020 WL 7074713 at *3 (N.D. Ohio Dec. 3, 2020). Other cases cited by the Commissioner appear to deviate from *Hayes*, pinpointing a particular standard rate but declining to double it to set a "floor" as *Hayes* requires. *See, e.g.*, *Hyla v. Comm'r of Soc. Sec.*, No. 1:18-cv-1279, 2020 WL 3512843 at *1 (N.D. Ohio June 29, 2020) (acknowledging $336 as the standard rate but reducing a fee award because the requested fee yielded a *de facto* hourly rate of $503.81 per hour, 1.5 times the standard rate).

Still others appear to use much lower EAJA rates as a benchmark for determining the "standard rate" for the § 406(b) analysis. *See, e.g.*, *Marion v. Comm'r. of Soc. Sec.*, No. 3:11–cv–00911, 2013 WL 5718753 at *3-4 (N.D. Ohio Oct. 18, 2013) (using 2011 EAJA rates as the standard rate even "[t]hough this case does not involve an EAJA fee petition"). But, as I explained above, I have

6

determined that $300 is the "standard rate" for this case based on the evidence counsel provided and based on other, more recent precedent.

Finally, one of the Commissioner's cited cases does reduce a fee from a *de facto* hourly rate of $797.84 to a *de facto* hourly rate of $350.  *Daniels v. Colvin*, No. 1:11-cv-806, 2017 WL 35697 at *1 (N.D. Ohio Jan. 4, 2017).  But this case does not persuade me to reduce the fee.  First, the $250 per hour figure *Daniels* uses as the standard rate derives from the 2013 edition of the Ohio State Bar Association report.  *Id.* at *1 n.14.  The most recent report, issued in 2019, states a higher figure, $336, which would yield a higher *Hayes* floor.  *See* The Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2019* at 45.

Second, *Daniels* offers no explanation for reducing counsel's hourly rate by approximately 57% and instead focuses on the relatively brief amount of time counsel spent on the case.  *Daniels*, 2017 WL 35697 at *1.  But here, Martin's counsel has shown they spent over 50 hours on this case. (*See* Doc. No. 24-4).  While the "brevity . . . of the representation" may have motivated the result in *Daniels*, that consideration does not apply in this case.  *Daniels*, 2017 WL 35697 at *1 (quoting *Lasley*, 771 F.3d at 310) (internal quotation marks omitted).  None of the cases cited by the Commissioner persuade me that I should set a *Hayes* floor of $350 or $400, much less that I should use either of those numbers as an upper limit on § 406(b) fees.

Third, the Commissioner objects to the raw "size of the requested fee." (Doc. No. 26 at 4). But the Commissioner's own citation to *Gisbrecht* undermines this argument.   In that case, the Supreme Court stated reductions may be appropriate "[i]f the benefits are large *in comparison to the amount of time counsel spent on the case.*"  *Gisbrecht*, 535 U.S. at 808 (emphasis added).  Neither *Gisbrecht* nor any other case cited by the Commissioner suggests I may examine the size of the requested fee in a vacuum and reduce it simply because it seems "very large." (Doc. No. 26 at 4).  Here, the

7

requested fee of $40,927.00 is congruent with the substantial past-due benefits award of $255,868.00. The requested fee is 16% of the total award, well below the 25% cap.

Because Martin's counsel prevailed in a difficult case and achieved a substantial result for their client, I find that the requested fee of $40,927.00 is reasonable. But because counsel was previously awarded $9,000 under the EAJA, counsel must refund this amount to Martin following receipt of this award.

### III. CONCLUSION

Accordingly, Martin's motion is granted, and counsel is awarded a fee of $40,927.00 under 42 U.S.C. § 406(b). (Doc. No. 24). Once counsel for the parties verify that Martin owes no pre-existing debts to the United States that are subject to offset, the Commissioner will direct that, following payment of Martin's counsel, the remaining money withheld from Martin's past-due benefits for the payment of his attorney fees be released to Martin.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge